May it please the Court, Your Honor, my name is David Chesnoff, and along with Richard Schoenfeld, we have the privilege of representing the appellant in the instant case. Larry Hall, Your Honors, the person who actually delivered the deadly shot to Tracy Wilkinson in this murder trial, testified against Mr. Evans and was never prosecuted. Counsel, I'm pretty attracted to your argument that it was ineffective assistance in the sense in the first branch that it fell below the standards of reasonably, I can't remember the formula, reasonably competent counsel in the community or something like that. Not to interview Hall. I can't figure out why Evans's lawyer didn't interview, didn't at least try to interview Hall. Hall might have said, no, I don't want to talk to you, but try. I am not clear on prejudice. I didn't see an affidavit. Gee, if Evans's lawyer had called me up or he'd come over to the bar where I hang out or come over to my trailer or whatever it is, I would have told them thus and such, and that's something that didn't come out at trial and that I didn't say at trial. That's what I was talking about. For me, anyway, focus on the prejudice from his failure to try to interview Hall. Your Honor, it was clear during the evidentiary hearing in the instant case from Mr. Hall's testimony that he was perfectly willing to answer questions. The most remarkable thing in this situation is Mr. Hall is still subjected to the potential for prosecution for murder since the statute of limitations wouldn't run, yet he got on the witness stand. The trial judge never advised him of his Fifth Amendment rights. At no time did anybody attempt to appoint a lawyer to assist him, which, in essence, Your Honor, creates the clear conclusion that he was willing to talk. And the prejudice here is as follows, Your Honor. Mr. Olson told the jury the following. If you believe Mr. Hall, you must convict. That's at page 50 of the trial record. Now, in telling the jury that, Mr. Olson is basically challenging the jury to either accept or reject Mr. Hall's testimony. Both Judge Palaha and Judge Hicks both commented on the record that, in fact, Mr. Hall's testimony was crucial to the conviction of Mr. Evans, and, in fact, but for Mr. Hall's testimony and his willingness to testify, there probably would have not have been a conviction in this particular case. Now we go to the evidentiary hearing on the petition for writ of habeas corpus, and we discover the following declarations by Mr. Hall. Mr. Hall had several interviews with the D.A. The D.A. asked him, what should he be charged with? So the D.A. was letting Mr. Hall know that you potentially could be charged. He testified he knew that that meant he could be charged. He testified at the evidentiary hearing that charges were already prepared against him, and, in fact, they showed him a charging document. Then they had the most important thing that they told him. They told him if Evans is not convicted, you will be charged. So the state of mind of Mr. Hall when he testifies in this murder trial is, if I don't give testimony that leads to Evans' conviction, this D.A. who sent three interviews with me is going to prosecute me for this murder. And did that come out at trial? It did not, because Mr. Hall had never been interviewed by Mr. Olson. Did Hall's – did Evans' lawyer have either knowledge or a pretty good reason to suppose that Hall would be charged if Evans was convicted, so that he could have asked, he just might have chosen tactically not to? I think that to argue that it was a tactical and strategic decision stands in the kind of the face of the Court's decisions that says, if you don't ever make pretrial inquiry, that can never be a proper strategic decision. And that's what Tucker talks about. That's what Turner talks about. So in the instant case, Your Honor, Mr. — All right. What I'm thinking of here is this was an experienced lawyer, and once he was convicted, he knew that Hall did not have some sort of agreement, express agreement, and he knew that. Then he had to know Hall might very well be saving his own skin. Well, actually, Your Honor, what makes this ineffectiveness more egregious is the fact that the lawyer is experienced. And his experience is what allowed him to basically put on a show – No, I don't think you're getting my question. I'm sorry, Your Honor. I'm thinking experienced lawyer says to himself, I don't have to ask Hall whether he knows that if they don't nail Evans, they're going to go after him. It's obvious that if they don't nail Evans, they're going to go after him because he doesn't have any kind of deal. So without spending days searching all the places where I might find Hall, I already know the answer to that question. I can safely ask it on cross. And you would assume that, Your Honor, but most respectfully, a review of the record, he never asked it. And the real problem, Your Honor, is not whether the lawyer recognized it, it's whether the jury recognized it. So the lawyer did not ask anything along those lines? He asked questions about the fact that he was involved, but he never said to him, do you have a concern that you will be prosecuted. And that's where the – both Judge Palaha and Judge Hicks – You never asked them, isn't it – isn't it true that you know very well if Evans doesn't get convicted in front of this jury, you're going to be indicted next for that murder? No. Did he ask him if he would – if – you know, whether you've been charged with a crime? I think – I don't even believe he went that far, Your Honor, as to even ask if he would be prosecuted. The real problem here, Your Honor, is all the cases point to the fact that we're not supposed to consider this as a weight-of-the-evidence question. We're supposed to examine whether the trier of fact, the jury in this case, was in a position to make an independent decision. Well, the burden is on you to show prejudice, though. And I'm – hopefully, I am showing prejudice when the jury in this instant case, Your Honor, never gets an opportunity to judge the following crucial fact. This guy is going to say anything he can to avoid being prosecuted. Usually, it's a little better than that. Usually, you get an at the day, but, gee, the lawyer never talked to me. If he had, I would have said it was somebody in a green sweater, not somebody in a red sweater. Except in this case, Hall does testify that the lawyer never spoke to him. And the – Hall also testifies that he would have told everybody what he told me in the hearing, the evidentiary hearing. That, in fact, he felt threatened. That, in fact, he felt that if he did not get a conviction for Evans, he was going to be charged. All of those facts came out in the evidentiary hearing. Did it come out in front of the jury in Evans' trial that Hall was the shooter? Yes. Yes, it did. In fact, that was something that happened during the course of the trial where Hall had to acknowledge that he was the actual – the actual shooter. But in most cases, Your Honor, where you have a plea agreement, one of the conditions of the plea agreement is that the witness tell the truth. And the prosecutor then has an obligation to make sure his witness tells the truth. This is more egregious because you have no agreement whatsoever except this agreement of silence or this agreement by threat, and then the witness testifies, and the jury does not know that, in fact, this man believes that unless the fellow he's pointing the finger at goes down, he is going to go down. And I can't think of a more egregious abuse of the jury system than not – Was there any corroborative evidence? There's a code of – another witness by the name of Roscoe, but who incidentally gives conflicting testimony to what Hall testifies. He basically colors it that he wasn't involved. Hall colors it I really wasn't involved until the end. Roscoe was the guy that called 911. Right. But he's dropped off. He's also the fellow that when Hall testifies, Hall describes as having kicked Tracy in the head on the ground and then participated in putting a bag over his head. So the corroboration is kind of – is not clear. And the two witnesses who both get no prosecutions, Hall and Roscoe, give dramatically different stories, on top of which Hall has given three or four different stories before the trial even begins. So now if you have a situation where you can tell the jury, look, Mr. Hall is saving his skin. Did Roscoe's version of events tend to corroborate Hall's story or Evans' story or what? It tended to corroborate Roscoe's story. So he had his own version. Yes. They all – everybody had a different version. There was no independent corroboration of each version. Why couldn't – why Hall's lawyer – I'm sorry, I misspoke. Why couldn't Evans' lawyer make the argument to the jury, ladies and gentlemen, Hall's the shooter. Roscoe, Hall says, put the bag over his head and kicked his head in. These two guys are saving their own skin by laying it all off onto my client. Why couldn't he make that same argument without interviewing Hall? In essence, he could make that argument, Your Honor, but I would respectfully submit in light of Tucker and Turner that the failure at the first level and the first phase of actual Strickland analysis to actually find out what Hall's state of mind was, or even for that matter to try to speak to Roscoe, which he never did either. You don't find what Hall's state of mind was. You find what Hall says about what his state of mind was. That's correct, Your Honor. Interview people. They lie a lot. Well, on the other hand, Your Honor, the proof was in the pudding. He never got prosecuted. So it certainly followed that if Evans was convicted, nothing was going to happen to Hall. So that kind of corroborates Hall's state of mind. And I think it's important for that jury in Nevada to have heard from the alleged eyewitness that the real reason I'm doing this, and you see the jury might have had this idea, wow, this is a swell guy. He's coming in and he's talking about all this crime he's done and what a ---- My point is he could do that anyway. Look, the guy admits he's the shooter. He hasn't been charged with anything. And he's doing what the prosecution wants in this case. He can do it anyway without a ---- I agree he could, Your Honor. I'm afraid he didn't. But even assuming arguendo that he did, Your Honor, it's much more powerful to be able to tell that jury if we're going to determine whether or not there's basic unfairness to this trial, that, in fact, this individual is testifying because he believes if the person he's testifying against is convicted, he will. It would only be better if in the interview Hall said, look, I skate even though I shot the guy in the head so long as your guy gets convicted. So I'm going to say anything I have to to convict your guy. And then he says the same thing on the witness stand at trial. He says, what I told you is true, and it's just what I said. But then he's jeopardizing his chance of skating. And that's why ---- So it doesn't seem too likely that the interview would really do that much good. Well, I have a ---- having ---- having examined Hall on the stand, there was no compunction on his part, even though the statute hasn't run, to acknowledge this, that this was his motivation for testifying. And, Your Honors, when we go to Tucker and Turner, we have to also examine the question of whether or not not interviewing is the kind of ineffectiveness that leaves us not really knowing the answer to the question you just asked, Your Honor. The fundamental flaw in all of this is that Mr. Olson didn't do what an individual who is a Sixth Amendment-effective lawyer in a Federal court in our ---- in our district, in our jurisdiction is supposed to do. He didn't interview the government witnesses. He didn't attempt to find out what their testimony would be. That's fundamental. Once we've established that, Your Honor, it's the burden-shifting under Tucker and Turner to the State of Nevada to explain to you how a crucial fact, such as the fact that the witness was not in a mindset that he would be tried if he gave testimony they convicted. They need to tell you how that doesn't fundamentally affect this trial and the case that Mr. Evans had. What would you have hoped or what could have come out of the interview of Hall that would have helped? It would have clearly come out that he had been interviewed by the prosecution in a manner that was threatening. He acknowledged that. They not only told him, you'll be charged, according to Hall's uncontroverted testimony, he acknowledges that they showed him charging documents. I don't know how much clearer the threat could have been, most respectfully, Judge Hogan. That came out at trial? That came out at the evidentiary hearing. On the post-trial? Yeah. The post-trial. Before the State district court? Yes. So it did not come out anything like that at the trial? No. And the reason nothing came out, most I respectfully submit, is because trial counsel didn't do anything to put himself in a position to find it out. What was Olson's primary argument before the jury, the close of trial? Todd didn't do it. He wasn't there. That's basically his testimony. He really didn't attack Hall in the traditional sense. You know, usually you impeach somebody with the plea agreement. Well, we didn't have one here. So I think at a minimum, a lawyer in Nevada should be in a position to tell the jury what the person's motivation for testifying is, because otherwise the jury is going to think he's just a good citizen. And unfortunately, that's the perception they were left with, because at no time at all did Mr. Olson attempt to elicit information that he would have gotten if he had even done fundamental investigation. How did he impeach him in the cross? He impeached him with the fact that he was had shot, and he asked him facts about where Todd was in different time sequences. You know, hindsight is 20-20, Your Honor, but it wasn't the most effective cross-examination in a capital case. He spent two hours with Todd interviewing him for a capital case. That's all Mr. Olson did. He had been involved in a very celebrated case just before this one, and he ran right into this case, spent two hours with Todd. And the cases are legions that talk about the necessity for defense counsel, especially in a capital case, to spend time with his client. He didn't spend any time with Mr. Evans in order to find out fundamental information. Wait a minute. He spent two hours with him. I thought the focus was failure at interview hall rather than not spending enough time with Evans. Well, one of the things that they talk about in Tucker or Turner, Your Honor, is the fact that a defense lawyer, in deciding what he needs to investigate and not needs to investigate, is he has to spend time with his client in order to make those determinations. Two hours can be enough. Yes, Your Honor, but I would respectfully submit in a capital murder case you couldn't possibly learn enough in two hours, having done my share, Your Honor. Weedy, weedy, winky. Excuse me, Your Honor? Oh, like Julius Caesar said, I came, I saw, I conquered. Yes. That may be all you get out of the interview. It's possible, Your Honor. But I most respectfully submit that once Judge Hicks found that this was a certifiable issue, the Court's correct in addressing the question of prejudice. And I believe that we've shown enough to make, to force the State to now tell you beyond a reasonable doubt why a jury in Nevada was not entitled to know that this man believed that he would never be prosecuted for a reason. Well, it's not exactly the standard that we apply. Well, I think that when you review Turner, Your Honor, it speaks to the Strickland standard. It's a reasonably probable that the outcome would have been different. But when you look at Tucker, Tucker tells us that Turner, although pre-Strickland, basically completely on all fours of them. And then, not only that, you're in the world of AEDPA as well. I think that even that — This is an unreasonable application by the Nevada Supreme Court. I think in this case it is, Your Honor. Of U.S. Supreme Court authority. Excuse me, Your Honor? Of U.S. Supreme — Well, I think this is violative of Strickland. And the cases in the Ninth Circuit — Well, it has to be an unreasonable violation of Strickland. Why would it be unreasonable, Your Honor? It has to be an unreasonable violation. I agree. And I think it's unreasonable in our jurisdiction. I've said that many times, but unfortunately, I never seem to get it right. So — Well, I'm with you on that one, Your Honor. The Supremes keep saying to us, like in Williams, that it's not enough for the State court to be wrong. They have to be totally out in left field. Well, I always say be true to yourself. So I ask the Court to do the same. Thank you. Thank you, counsel. Good morning. It's still morning. Eric Levin on behalf of the appellee, Deputy Attorney General. That's my position. Judge Kleinfeld, I hope you're still going to give me the opportunity to — to convince you that both — neither prong of Strickland was satisfied, not just prejudice, but also the — the effectiveness prong. Help me — let me give you my focus on this. I want to be real candid with you so that you can direct your remarks initially to what's on my mind. I don't know what my colleagues will be concerned about with you. I did criminal defense, and I spent so much of my time driving around bars and raunchy residences and scary, unpleasant places to talk to people. And every now and then, I'd get something useful. And actually, kind of often, I'd get at least something that I could use, even if only to avoid a witness, that my client had said, this will be a good witness, and it turned out he wouldn't be. And this guy, it looks like he's got a much more serious case than — than I ever defended. I never defended anything quite as — as — as serious as this one. And I just can't imagine not interviewing Hall. And what's more, Hall is so impeachable, I just can't imagine it. And it's sort of hard for me to say, well, a competent lawyer wouldn't have, and anyway, it doesn't matter, even though I'm not clear on how it did matter. Well, without a question, the state court itself recognized that it would have been better for Mr. Olson to interview Larry Hall. In this particular case, however, they found that he had conducted various other investigations, and he didn't just ignore the situation. He did other things, and they felt that in light of those other things that he did, which included — I can have just a moment. Oh, it was a preliminary hearing. It included interviewing the police detectives that had interviewed Hall. It included talking to the district attorney to find out what deals or promises may have been made. It included having the opportunity to examine and pin down Larry Hall at preliminary hearing as well as at trial. Could he find out about the threat? If evidence doesn't go down, you will? No, he didn't find out about the alleged threat. I think the evidence or the testimony at the evidentiary hearing was contradictory at best, and — Let's say it was contradictory. So let's say that Hall perceived himself or would have claimed that they threatened him. If evidence doesn't go down, you will. Did Evans' attorney find out that that's what Hall would say? I don't believe there's anything in the record to indicate that he found out at the time of trial. But — and I'll get to the evidentiary hearing and what was said there. So, anyway, those were the reasons why the State courts declined to find ineffectiveness on the part of Olson at the trial. Well, what did Hall say in the evidentiary hearing with regard to the threat? You say it's inconsistent or ambiguous? Yeah. And can I address that in just a second and mention one other point also? Okay. I will get to that. And that is, I think, contradictory to what was said earlier. At the trial, Larry Hall was advised of his Fifth Amendment rights by the trial judge, and I think you'll find that on page 380 of the trial transcript. So I just — I want the Court to be aware of that as well. That supports your adversary's argument, doesn't it? No. I think it supports the fact that the findings by the State court that you've got an attorney. No, no. I mean, if Hall just went ahead like a bull testifying despite the warning that what he said could be used against him, that supports your adversary's argument. That whatever useful things Hall might have to say that Evan's lawyer found out about at the interview, he might well have been fool enough to testify to at trial instead of clamming up. Well, I don't think it's our position that he would have said anything useful if he had even agreed to be interviewed, and there's nothing in the record to show that he ever would have agreed to be interviewed. That question was never asked of him at the evidentiary hearing. Now, you've asked what was stated at the evidentiary hearing. Larry Hall testified at the evidentiary hearing that the district attorney said that if he didn't get a conviction on Evans, he's going to go after Hall. Larry Hall testified that he did not take that as a threat. And you'll find that I can cite to the record if you like. Well, that's a pretty important piece of information, though, isn't it? Oh, about the threat? Yeah. Well, about you're going to be next. Yeah. I think that was also contradicted by the district attorney. So you've got some contradictory evidence as well as Larry Hall's. Well, nonetheless, as a defense attorney, you would want to know that information. You could use it quite effectively in a cross-examination. If that would have come out at the time. And keep in mind that the evidentiary hearing was conducted some six years after the trial. So Larry Hall's state of mind six years later. But we know from the evidentiary hearing that he had these conversations with the DA prior to trial. Well, we know from the evidentiary hearing that he alleges he had these conversations that the district attorney and another witness in the room at the time both denied. I don't really see that it's contradicted. Hall says, oh, he did make a statement. And I believe that was in front of his assistant. That in the event he was not able to get a conviction, I would be next for his charges. Okay. And this was before he testified. Correct? Yes. And then the part that you say puts it in doubt. Okay. Did you consider this as a threat? No. I'm thinking, that's not a threat. It's a promise. Well, he also on page 178 said no promises were made. He denied that the DA told him how to testify or that the DA would come after him. That's on page 179. He affirmed that the district attorney told him to be truthful. He said that a couple of times on 179 and 182. Explains what he meant by threat. I don't feel he was threatening me with what he said. I think he was just trying to enlighten me. Yeah. I think later on in the hearing, you have both the hearing judge as well as the state's representative commenting on Larry Hall's ability to really directly answer some of these questions. So is he being evasive? Is he just not the brightest bulb? I don't know that we'll ever know. But they both seem to have an idea. But if you were told that information that Judge Kleinfeld just read, whether you categorize it as a threat or a promise or something, in the back of your mind, you would be thinking, if he doesn't get convicted, I'm going to. Well, he specifically denied that as well. Which is why I say, at best, his statements were contradictory. At page 183, he said that he would he thought he would be charged with something regardless of the outcome. He denied the DA offered his freedom contingent on Evans' conviction. So he's kind of all over the board on this. And I think these are some of the things that the state judges, you know, can consider in terms of credibility and what his state of mind was, both at the hearing as well as at trial. Your time is beginning to run now. So let's just assume that he was ineffective. We don't even have to decide that question. We can decide this case on prejudice. Sure. So assuming he was ineffective, why wasn't this prejudicial? Yeah. And first, I just need to state that contrary to what was in the appellant's brief, United States v. Tucker, to the extent it says that prejudice can be presumed, that's since been superseded by Strickland v. Washington. And you've articulated the standard there. Is it reasonably probable that the trial record would come back? Right. And it's the appellant's burden at the State level to affirmatively show prejudice, which the State courts found had not been done. And now there's the deference that goes to the State courts. So it's kind of a double burden they have here today. Do the cases tell us, does reasonably probable mean more probable than not, or does it just mean a fair probability, a good shot? It's a good question. To tell you the truth, I don't know the answer to that. I don't know the answer to that. I think they've just left, as far as I know, they've just left it in that, those terms and that phrase, reasonably probable. So let's say the jury had heard. Had heard that Evans believed he was threatened. What do we do with that? I have to believe that, in addition, they would have heard a denial of that. But hypothetically, had they heard that, there was the Supreme Court, in their findings, also found that there was sufficient corroborating evidence from Rasko, as well as a little bit of corroborating evidence from another State's witness. You have Hull and Rasko, neither of whom knew each other prior to the event. They met the night of the event. I mean, the night before the event, right? They had met that night, or just before. Yeah, I believe that was the testimony, that they had met that night. There certainly were differences amongst their testimony, as happens. But I believe their testimony was fairly consistent when it came to appellant's participation in the murder. At what points were they consistent? I think they were fairly consistent through the two-hour beating that the deceased suffered, primarily at the hands of Todd Evans. The testimony was that while it might have been possible that the deceased, Mr. Wilkerson, might have survived the beating, the cause of death was the beating, the severe head trauma, in conjunction with the bullet that Larry Hull shot into Wilkerson's head, according to Larry Hull's testimony, at the insistence of Todd Evans. So anyway, on the direct appeal, in the order of affirmance, the Nevada Supreme Court went through much of the corroborating evidence that was presented to the jury. And that's one of the reasons that they did not find prejudice.  One was the corroborating testimony, which they felt was sufficient. The other reason was they didn't believe that, had Larry Hull been interviewed by John Olson, that he ever would have revealed this information that he was somewhat claiming six years later. So for both those reasons, they didn't find prejudice. That was on direct review, though, right? The corroborating evidence was on direct review. The fact that they didn't believe, had Larry Hull been interviewed by John Olson, he would have revealed any of this information. That was on collateral review. When they reviewed the district court's findings of fact. Correct. So, having said that, I need to reiterate that none of the reviewing courts to date have found ineffectiveness on the part of John Olson. And I think there's also a common sense aspect to that. Now, I've never practiced defense law, but you've got an attorney, he's got a working relationship with the district attorney, talks to the district attorney, and he finds out there's no promises been made. He knows they don't offer immunity. The witness testifies on the stand that no promises were made, that he knows he can still be prosecuted. To go that extra step to say, well, in light of all that information that you have, to then ask, to think, to ask this witness, do you have a subjective belief on that? It makes sense to me in terms of experience. I mean, all those trips to the jail and the bars and all that stuff. Sometimes I find out the person had something really good to say, it was really useful. Sometimes it was something I didn't even think to ask him. Often it was something the police didn't know about. One time I discovered my client was innocent when I thought he was guilty. That's rare, but it happens. And often I would discover something about the guy, not even what he said. Like, this is a big, scary, drunken bum. Once the jury sees him, my guy's going to look pretty harmless. And they don't even have to talk for you to see that, but you don't pick that up from just looking at papers. Sure. And, you know, with the Strickland caveat about the 20-20 hindsight and intensive scrutiny, I think nevertheless, though, if we put ourselves in John Olson's shoes at the time, let's say he had spoken to Larry Hall, and he's already got all this other information from the DA and the investigators. You know, he knows no promises have been made. He might have asked Larry Hall all kinds of questions, but I think we have to be skeptical whether we'd ask him after Larry Hall telling him, you know, there's been no promises made to me. I've been granted no immunity. Well, besides that, do you still believe do you have a subjective belief that you won't be prosecuted if my client's convicted? I don't think it's very reasonable to think that an attorney would have thought under those circumstances to ask that particular question. Sure. Might it have come out? Actually, you would never use words like subjective belief. But, yeah, it is. You know, one of the things that bothers me in looking back through this, the testimony at the evidentiary hearing, says, yes, he did. This is Hall saying, yes, he did make a statement. I believe that was in front of his assistant that in the event he was not able to get a conviction, I would be next to be charged. Then it went on. Did you think it was a threat? No. And we've discussed that. Well, did you consider that if Todd lost, he was going to charge you? Well, I knew that would be inevitable, according to him. So your state of mind when you testified, was that in event Todd was acquitted, you would be next? Yes. I felt that what he was telling me was the truth. I have no reason to suspect otherwise. So that, and then connection with the fact that he was never arrested, and when he turned himself in, they didn't arrest him, isn't that something that you would find out if you were the attorney? And that would be pretty important knowledge in the trial. Well, again, those were statements made at a hearing some six years later that were contradicted by the witness at the same hearing. Again, he also denied that the D.A. said how to testify or he would come after him. He denied believing that he'd be prosecuted if he took that net. Oh, the D.A. didn't say it, but he was pretty skillful in leaving the impression with him that, yep, you're going to, if Evans gets convicted one thing, if Evans doesn't get convicted, you're next. Right. And he also said at that same hearing that he thought he would be charged with something regardless of the outcome. So he made a number of contradictory statements. I think those go to how the State judges weighed his credibility. And, you know, I think that the... So that you'd, in other words, that you would consider the things I just read would be incredible? Yeah. I think the State court found them incredible in light of everything. Did they ever say that? I'm sorry? Did they ever say that? They said that they didn't believe that, they doubted whether Hall would have spoken to John Olson, and they doubted whether or not he would have revealed these subjective beliefs that he had. Well, that's a whole lot different than saying what his actual state of mind was. Well, the State... It's a question of whether he revealed it or not. That's a legitimate concern. I don't know that they specifically said that, but I think it is fair to infer that from the fact that they found no prejudice. Well, I guess that's what we're looking at, whether there was prejudice or not. Sure. And I'm sure this Court knows that factual findings necessary for the decision of the State courts may be inferred as well. And those would then be entitled to the presumption of correctness that EDPA imposes. I guess I would look at it a little differently if they had said that this information I just read to you was not credible. I don't think they said that. No, they made various findings and they didn't address each statement that the witness made at the evidentiary hearing. But that was the evidence before them that they relied on in coming up with their decision. Okay. Thank you, counsel. Thank you. Judge Kleinfeld, you asked about the impeachment of Hall. I want to read from Judge Balaha's opinion to you. As for counsel's failure to properly impeach Hall and Rasco based upon their drug usage and criminal record, this argument is tied into the lack of investigation by Mr. Olson, and it's an area of concern for the Court. The Court finds that Mr. Olson's representation fell below the reasonable standard on this point. So Judge Balaha found that that was the case. In addition, Judge Hicks, at page 13 and 14 of his district court order, he states the following. There is a deficiency in the pretrial phase which led to an incomplete cross-examination. The statements that were made by Hall are the following at the evidentiary hearing. Did you consider that a representation by Mr. Villora that, in fact, he was in a position to charge you because of your conduct on April 3rd and 4th? Yes. What was your state of mind as to whether or not you were going to be arrested? Well, he told me that he had already prepared charges, and he gave me, I guess, a copy of three charges, I think it was. Do they indicate to you that they believe that you shot into the body of the deceased? Yes. Did you ultimately admit to them that you shot into the body? To the police, I admitted that I had. At any time, did Mr. Villora tell you what happened if he didn't get a conviction against Todd? Oh, he did make a statement, and I believe that was in front of his assistant, that in the event he was not able to get a conviction, I would be next for his charges. Okay. And this was before you testified, correct? Yes. Did you consider that if Todd lost, he was going to charge you? Well, I knew that would be inevitable, according to him. So your state of mind when you testified was that in the event Todd were acquitted, you would be next. Yes. I felt that that what he was telling me was the truth. I have no reason to suspect otherwise. And then the argument that somehow what the DA says about whether that happened, in large part, becomes immaterial because it would be Hall that would be on the witness stand, and I guess the defense would wind up in a really good situation if Hall said something, and now the prosecutors in the case are calling their own witness a liar. So to suggest that somehow there's a conflict between the DA and Hall, Hall had nothing to gain by telling the truth at the — by testifying this way at the evidentiary hearing. We hadn't threatened him. We just asked him to tell the truth under oath, and he did. And unfortunately for Evans, as a result of Mr. Olson's complete failure to do pretrial interviews of prosecution witnesses, he never learned whether or not he should even continue. And then you take it to the next step and Mr. Olson didn't talk to him, and there can be no question, most respectfully, Your Honor, that in a murder trial where you have a person on the witness stand testifying and pointing the finger at you that says to a jury, you know, I'm saying this not because I have a plea agreement, not because I'm supposed to tell the truth, but I'm saying this because if I don't convict this guy, I'm next. It can't be more powerful than that, Your Honors. Thank you. Thank you, counsel. Evans v. Fudge is submitted. We are adjourned for the day. All rise.
judges: Hug, Kleinfeld, Paez